IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:16-CR-536-L |
| EDWARD VILLARREAL | |

## FACTUAL RESUME

The defendant, Edward Villarreal, has reviewed with his attorney, Jeff Ansley, and acknowledges that he understands in order to establish his guilt for Count 23 of the Superseding Indictment filed against him, namely Making a False Statement to the FBI, in violation of 18 U.S.C. § 1001, the government must prove each of the following elements beyond a reasonable doubt:

*First:*  That the defendant made a statement to the FBI;

*Second:*  That the statement was false;

*Third:*  The statement was material;

*Fourth:*  That the defendant acted knowingly and willfully, that is that the defendant acted voluntarily and purposely, with knowledge that his conduct was unlawful; and

*Fifth:*  That the statement pertained to a matter within the jurisdiction of the executive branch of the United States government.[1]

---

[1] These elements are consistent with the memo from Patty Merkamp Stemler, Chief, Appellate Section, with respect to "Guidance Regarding the Definition of 'Willfully' in 18 U.S.C. §§ 1001 and 1035." That memorandum directs prosecutors to request jury instructions in prosecutions under section 1001 consistent with the department's policy that "willfully" requires proof that the defendant knew his conduct was unlawful.

The Fifth Circuit Pattern Jury Instructions (2015 Edition) set out the following elements.

*First:*   That the defendant made a false statement to the FBI regarding a matter within its jurisdiction;

Factual Resume – Page 1

## Stipulated Facts

On or about May 7, 2015, in the Dallas Division of the Northern District of Texas and elsewhere, Edward Villarreal, in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), did knowingly and willfully falsify, conceal, and cover up material facts by trick, scheme, and device, and make materially false, fictitious, and fraudulent statements and representations, in violation of 18 U.S.C. § 1001.

Edward ("Eddie") Villarreal was an officer of the Dallas Police Department between September 1994 and October 2015. Between 2001 and 2017, Villarreal also served as a security consultant and the head of security for Alfredo Hinojosa, who owned several nightclubs in the Dallas Fort-Worth area and elsewhere. Villarreal often worked nights at the clubs and regularly spoke with club management, including Alfredo Hinojosa, Martin "Chava" Salvador Rodriguez, Mike Casas, and Humberto Novoa. Villarreal made significant income through his work for Hinojosa and came to rely on that income more than his income from the Dallas Police Department.

Villarreal assisted in supervising and overseeing other Dallas police officers or other law enforcement officers who served in an off-duty role as security at Hinojosa's clubs. Villarreal was also called upon by Hinojosa and others for assistance when legal or criminal matters arose that impacted Hinojosa, his employees, or clubs.

---

*Second:* That the defendant made the statement intentionally, knowing that it was false;

*Third:* That the statement was material;

*Fourth:* That the defendant made the false statement for the purpose of misleading the FBI;

A statement is material if it has the natural tendency to influence, or is capable of influencing, a decision of the FBI. It is not necessary to show that the FBI was in fact misled.

For example, on April 14, 2015, in an investigation unrelated to Villarreal, law enforcement officers with the FBI initiated surveillance at the residence of Martin "Chava" Rodriguez, located at 4815 Holly Tree Drive, Dallas, Texas. Agents followed Rodriguez as he departed his residence. During the surveillance operation, Rodriguez suspected he was being followed. Rodriguez placed a telephone call to Villarreal to ask for advice and assistance.

In response to the call, Villarreal told Rodriguez to pull over at a certain location and then personally drove to that same location in a personal vehicle. Villarreal pulled up behind the FBI vehicle and activated red and blue emergency lights.

The agents stopped their vehicle and Villarreal approached the FBI vehicle and asked if the agents were the police. The agents identified themselves as agents of the FBI, and Villarreal identified himself as a DPD officer.

Villarreal exchanged contact information with the FBI agents and Villarreal advised the FBI agents that he would assist the FBI if needed with their investigation. Villarreal did this in an attempt to learn more about the investigation, so that he could provide that information to Hinojosa, Rodriguez, and others. Villarreal did not intend to assist the FBI.

Shortly thereafter, Villarreal called one of the same FBI agents and provided information about a target he thought the FBI might be interested in. Villarreal said this individual was probably dealing cocaine in the bathrooms of certain nightclubs managed by Hinojosa. Villarreal did this in an effort to deflect attention from the true owners and managers of the clubs.

Subsequently, on the same day (April 14, 2015), Villarreal contacted Alfredo Hinojosa telephonically and informed him that Rodriguez had been followed by the FBI. Villarreal relayed what he had learned from the FBI to Hinojosa.

Villarreal knew that providing this information to Hinojosa was in violation of his duties as a Dallas Police Officer and breached the trust bestowed upon him as a law enforcement officer. Villarreal further realized that this action could have obstructed the FBI's investigation by alerting a target of the investigation of the existence of the investigation.

Subsequently, on the next day (April 15, 2015), FBI agents again spoke with Villarreal and specifically advised Villarreal of the existence of an ongoing Federal Grand Jury Investigation in relation Rodriguez and others.

On April 17, 2015, the FBI contacted Villarreal again and provided him with an update regarding the investigation and advised him that the investigation had begun as a result of a complaint that had been made to the City Council.

Subsequent to that conversation, Villarreal traveled to Hinojosa's office located at 201 N. Harwood and informed him of what he learned from the FBI. Villarreal specifically informed Hinojosa of the grand jury investigation. He specifically identified the agency involved in the investigation, who had been followed, and specific City Council members that he suspected as being the source of the complaint.

Notably, however, Villarreal told Hinojosa, "they just know there's a lot of money involved and Mexican and narcotics, maybe drug cartels . . . they don't know anything

about nothing. . . so you got detectives that don't know anything about you." Villarreal also told Hinojosa "I can get in trouble – if they think I'm warning you . . . ."

Subsequent to his conversation with Hinojosa, Villarreal left 201 Harwood. Immediately thereafter, FBI agents called Villarreal to provide him additional information that they had learned regarding the investigation into Hinojosa and the nightclubs.

Once in receipt of that information, Villarreal immediately turned around and walked back into 201 N. Harwood and informed Hinojosa of his latest telephone conversation with the FBI. During this conversation, Hinojosa asked Villarreal whether law enforcement would be watching his club that weekend and Villarreal told him it was possible and that if they did they were "going to find something" in relation to drug sales. Hinojosa also told Villarreal that "there is more shit that they [the FBI] could find with Chava than me." Following their discussion regarding the ability of the FBI to find drugs being sold in Hinojosa's clubs, Hinojosa stated "I want to tighten it down" and "tighten the bathrooms" and Villarreal agreed that this would be a "good thing."

On May 7, 2015, the FBI contacted Villarreal and asked if Villarreal had informed anyone about the traffic stop of Rodriguez and the ongoing investigation. Villarreal said no. Villarreal knew that this statement was false as he had specifically informed targets of the investigation regarding the traffic stop and of the existence of the investigation. He also knew that that this information was material to the FBI's investigation as the FBI would need to know whether other law enforcement agents were disclosing sensitive information about the investigation to the targets of the investigation.

This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support Villarreal's guilty plea to Count 23 set forth in the Superseding Indictment.

_/s/ Matt for Errin Martin_  
ERRIN MARTIN  
Assistant United States Attorney  
1100 Commerce Street, Third Floor  
Dallas, Texas 75242-1699  
Telephone: (214) 659-8600  
Facsimile: (214) 659-8812  
Email: errin.martin@usdoj.gov

12/5/2017  
Date

_/s/ Edward Villarreal_  
EDWARD VILLARREAL  
Defendant

7-10-17  
Date

_/s/ Jeff Ansley_  
JEFF ANSLEY  
Attorney for the Defendant

7/10/2017  
Date

Factual Resume – Page 6